1 | PHILIP D. DAPEER (State Bar No. 53378)
PHILIP D. DAPEER
2 | A Law Corporation
2625 Townsgate Road, Suite 330
3 | Westlake Village, California 91361-5749
Telephone: (323) 954-9144
4 | Facsimile: (323) 954-0457

5 | Attorney for Debtor

6

7 | **UNITED STATES BANKRUPTCY COURT**

8 | **CENTRAL DISTRICT OF CALIFORNIA**

9

10 | In re:  | Case No.: 2:10-bk-44108-BR

11 | JEAN DETHIERSANT,  | [Chapter 11]

12 | Debtor.  | **NOTICE OF MOTION AND MOTION FOR ORDER**

13 | **REOPENING CASE AND GRANTING RELIEF FROM**

14 | **DEFAULT PURSUANT TO BANKRUPTCY RULE 9024;**

15 | **SUPPORTING DECLARATIONS AND MEMORANDUM OF POINTS**

16 | **AND AUTHORITIES**

17 | Date: 5/10/11
Time: 10:00 am
18 | Ctrm: ~~1668~~ 1660

19

20

21 | **TO THE UNITED STATES TRUSTEE, CREDITORS AND PARTIES IN**

22 | **INTEREST:**

23

24 | Notice is given that on 5/10/, 2011, at 10:00, a.m., or as soon thereafter

25 | as this matter may be heard, in courtroom ~~1668~~ 1660 of the above court located at 255 E.

26 | Temple Street, Suite 1660, Los Angeles, California 90012, debtor Jean Dethiersant,

27 | by his newly retained counsel, will move the court for an order reopening this case

28 | and granting relief from default pursuant to Bankruptcy Rule 9024.

1

1    This motion seeks an order vacating the order dismissing this case with 180 day

2 restriction, which order was filed January 28, 2011, and entered February 3, 2011.

3 Debtor seeks an order reinstating this case as an active case under Chapter 11 of the

4 Bankruptcy Code.

5

6    Local Bankruptcy Rule 9013-1(f) requires a written response to be filed and

7 served at least 14 days before the hearing.

8

9    This motion is based upon this notice of motion, the accompanying declarations

10 and memorandum of points and authorities, the pleadings, records and files in this

11 case and such oral and documentary evidence as may be presented at the hearing on

12 the motion.

13

14 DATED:  March  11 , 2011          PHILIP D. DAPEER
                                    A Law Corporation

15

16                                  PHILIP D. DAPEER

17                                  Attorney for Debtor

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR ORDER REOPENING CASE AND GRANTING RELIEF FROM DEFAULT

# DECLARATION OF JEAN DETHIERSANT

I, Jean Dethiersant, declare:

1.    I am the debtor in this case.  I have personal knowledge of the facts set in this declaration and if called and sworn as a witness could and would competently testify thereto.

2.    I give this declaration in support of my motion for order reopening this case and granting relief pursuant to Bankruptcy Rule 9024.

3.    Specifically, I seek relief from the order filed January 28, 2011, and entered February 3, 2011, dismissing this case because the disclosure statement and plan of reorganization were untimely filed on January 24, 2011, and reinstating this case as an active case under Chapter 11 of the Bankruptcy Code.

4.    I retained attorney Michael Berger to represent me in connection with the filing and prosecution of a case under Chapter 11 of the Bankruptcy Code on or about July 23, 2010.  Attached hereto, marked Exhibit "A" and incorporated herein by this reference, is a true copy of the written retainer agreement that I signed at the request of attorney Michael Berger.

5.    Before signing the retainer agreement, I told Mr. Berger that I wanted him to personally handle all significant aspects of the case, even though I knew that he had associates and junior attorneys working for him in his office.  Mr. Berger told me that he would take personal responsibility for my case, and on that basis I agreed to the terms of his written retainer agreement.  I also paid Mr. Berger the requested retainer.

3

6.    I have now learned, after consulting with attorney Philip Dapeer, that apparently, at least from the files, Mr. Berger never complied with the guidelines and rules of the Office of the United States Trustee with respect to drawing against the retainer for services rendered and costs incurred over the course of this case. Further, Mr. Berger did not render to me monthly billing statements from which I could determine what work Mr. Berger and his firm did on my case, which attorney worked on the case, which attorney performed which tasks, and what work product was generated at what point in time during the course of the case. I had told Mr. Berger that I wanted to be actively involved in the management of my case, and I wanted to be kept fully informed as to all matters involving my case. I also wanted to be assured that Mr. Berger and his firm would send me copies of all pleadings, records and files generated over the course of my representation. While Mr. Berger assured me that my requests would be complied with, they were not, and I was not kept informed as to what was going on in my case, notwithstanding my repeated and unanswered telephone calls to Mr. Berger and the other attorneys in his firm.

7.    In fact, I was not told anything by any attorney in Mr. Berger's office about the hearing that went forward in this case on January 25, 2011, and I had no idea that there was a risk that my case would be dismissed or converted, or dismissed with any bar prohibiting a refiling of the petition. In fact, I did not learn anything about what happened at the hearing on January 25, 2011, until the first week in February, some two weeks after the hearing, when I was told by an associate in Mr. Berger's office that the case had been dismissed with a 180 day bar against refiling, and only after I had learned what had happened at the hearing from a creditor who told me that my case had been dismissed. I was told that the case had been dismissed for the first time on February 7, 2011 by a creditor.

8.    It turned out to be the case that over the entire course of the bankruptcy

4

proceedings, I only had two meetings with Mr. Berger, each lasting no longer than 20 minutes, and during which he was interrupted by multiple telephone calls. He did not answer my questions, and was never prepared to discuss how a plan should be formulated in the case.

9.    When I was able to speak with an attorney, it was usually Moran Glazer I subsequently learned that attorney Glazer only passed the bar in December of 2007. I was also referred to a paralegal in Mr. Berger's office, who assisted me in the preparation of the monthly operating reports. Attorney Mahurin rarely returned my calls.

10.    I have now consulted with a new attorney, Mr. Philip Dapeer, who maintains his offices at 2625 Townsgate Road, Suite 330, Westlake Village, California 91361. Mr. Dapeer practices bankruptcy law and I am aware of the long list of Chapter 11 cases in which he currently represents debtors-in-possession in Chapter 11 proceedings pending in the United States Bankruptcy Court, Central District of California. In fact, Mr. Dapeer represents my brother, Mr. Charles Jeannel, in a pending Chapter 11 case. I was referred to Mr. Dapeer by my brother. I also know that in just the last month, Mr. Dapeer has had two real estate Chapter 11 plans confirmed, one by Judge Ellen Carroll and one by Judge Geraldine Mund – both cases similar to my case in that they involved multiple income producing investment properties.

11.    I was just recently able to secure my entire file from Mr. Berger's offices and I turned my file over to Mr. Dapeer. Mr. Dapeer has reviewed that file and has advised me regarding various deficiencies in Mr. Berger's representation involving matters of which I was never kept informed by Mr. Berger or any other attorney in his office. I've now had the opportunity to review the docket in my case, and with the

5

1  assistance of Mr. Dapeer, am now aware of matters that were concealed from me by

2  Mr. Berger and the attorneys in his office.

3

4      12.    I came to learn that Mr. Berger had applied to the bankruptcy court for an

5  extension of time within which to serve and file my plan and disclosure statement.  I

6  do not understand and did not understand at the time why an extension of time was

7  necessary.  As far as I was concerned, I had provided Mr. Berger and his office with

8  all financial information and documents concerning my real estate holdings from

9  which Mr. Berger and his associate attorneys could have prepared the plan and

10 disclosure statement in a timely fashion.  There was nothing ever asked of me by Mr.

11 Berger or any associate in his office that I did not comply with promptly.  I provided

12 all financial data requested of me regarding my properties and I always made myself

13 available at any time to answer any questions or confer with Mr. Berger or any

14 associate in his office regarding the plan and disclosure statement.

15

16     13.    In any event, I did sign a declaration, as requested by Mr. Berger, in

17 support of a motion to extend the due date for the filing of the plan and disclosure

18 statement to January 12, 2011.  A copy of that motion which I have now obtained

19 from the files, but which was never given to me at the time the motion was made, is

20 attached hereto, marked Exhibit "B" and incorporated herein by this reference.  The

21 point is, I understood and I assumed that Mr. Berger and the attorneys in his firm

22 understood that the plan and disclosure statement were due to be served and filed on

23 or before January 12, 2011.

24

25     14.    As far as I am concerned, there was absolutely no reason why my former

26 lawyers could not have complied with that deadline.  I cannot think of anything that I

27 was asked to do that I did not do, or any financial information about my properties

28 that I was asked to provide that I did not provide to former counsel immediately upon

1  their inquiry.

2

3      15.    In fact, I was the person who kept inquiring of the attorneys in Mr.

4  Berger's office regarding when the plan and disclosure statement were going to be

5  completed. Prior to Christmas, 2010, I asked attorney Moran Glazer when the plan

6  and disclosure statement were going to be ready. She told me that attorney Mike

7  Mahurin was going to complete the plan and disclosure statement between Christmas

8  and New Years. I heard nothing from any of the lawyers in Mr. Berger's office during

9  that period of time. In early January, I inquired again about when the plan and

10 disclosure statement would be ready, and I was assured that it would be given to me

11 for review by January 10, 2011.

12

13     16.    Amazingly, I heard nothing further from my lawyers regarding the plan

14 and disclosure statement, and the court ordered deadline came and went without any

15 comment, explanation or communication from Mr. Berger or anybody in his office. I

16 became very upset about the situation. On January 14, 2011, I sent an e-mail to

17 attorney Mike Mahurin complaining about the fact that I was not getting any returned

18 telephone calls, and asking when the plan would be ready. See exhibit "C" hereto. I

19 was not until about January 17 and 18, 2011, that the lawyers in Mr. Berger's office

20 started for the first time to ask me questions about the completion of the plan and

21 disclosure statement. It was obvious to me that they had done nothing to work on my

22 case from and after Christmas, 2010.

23

24     17.    I was not provided a draft of the plan and disclosure statement until

25 January 19, 2011. I found many errors in the plan and disclosure statement.

26 Corrections were not made until January 24, 2011, when I was requested to fax to Mr.

27 Berger's offices my signature pages to the plan and disclosure statement. I was told

28 that the plan and disclosure statement would be filed and served immediately. I have

MOTION FOR ORDER REOPENING CASE AND GRANTING RELIEF FROM DEFAULT

1  now discovered from a review of the docket that the plan and disclosure statement

2  were finally filed as document 52 of January 24, 2011, one day before the hearing in

3  this case on January 25, 2011.

5  18.    My reference to the exact dates may be mistaken by a day or two because

6  I am referring to the motion for extension of time attached by way of exhibit hereto.

7  Regardless of the exact date when the plan and disclosure statement was due to be

8  served and filed prior to the hearing on January 25, 2011, the point is that there was no

9  excuse for a late filing and the late filing had nothing to do with anything that I failed

10  to do in assisting my counsel in preparing the plan and disclosure statement for timely

11  filing.  My former attorneys will never be able to give any competent and honest

12  declarations to the effect that they were delayed in doing anything because of my

13  inattention or my failure to respond to requests for information for purposes of

14  preparing the plan and disclosure statement.

16  19.    Over the entire course of representation, I was never counseled by Mr.

17  Berger or any member of his firm as to how I should proceed with a plan of

18  reorganization or what would be a feasible plan based upon my financial situation.

19  The only thing I was told by Mr. Berger that could in any way be characterized as

20  legal advice was that he told me to keep paying on all of my properties but not on my

21  house at 8571 Franklin Avenue, Los Angeles, California. He said that since I had

22  stopped pay the mortgage on my residence pre-petition, I did not have to make

23  payments after the petition had been filed.  Had Mr. Berger told me to continue to

24  make payments on my residence, I would have done so.  The Chapter 11 process was

25  never explained to me by Mr. Berger or any other attorney in his firm.  Nobody gave

26  me any advice or counsel as to what kind of a plan should be proposed to creditors.

27  Of course, I myself had no idea how to structure a plan that would be feasible and in

28  compliance with bankruptcy law.  I hired lawyers for that kind of advice, which I

8

1    never got.

2

3      20. The lawyers in Mr. Berger's firm did not promptly tell me what

4    happened at the hearing on February 25, 2011. In fact, I had no idea there was a

5    hearing scheduled for February 25, 2011. I kept getting different answers from the

6    lawyers as to when the plan and disclosure statement were due to be filed. I was told

7    that the due date was January 11, 2011, but by then, no work had been done on the

8    documents. Then I was told the due date was January 24, 2011. They had me fax back

9    to them my signatures to the document at about noon on January 24, 2011. Ms. Glazer

10   said that it was fine to file the plan and disclosure statement on January 24, 2011

11   because it would be given to creditors who would then have four to six weeks to study

12   the document.

13

14     21. I recall that on January 29, 2011, I asked Michael Berger and Mike

15   Mahurin what had happened to the disclosure statement and plan, but I never got a

16   returned telephone call. Nobody in Mr. Berger's office told me what had happened at

17   the hearing on January 25, 2011.

18

19     22. To my shock, I learned that the case had been dismissed with a 180 day

20   bar on February 7, 2011, and I learned the fate of the case from a creditor when I was

21   speaking with the lender, Chase, regarding my residence. I sent an e-mail to Moran

22   Glazer on February 8, 2011, asking for an explanation as to what had happened in

23   court on January 25, 2011, but I never got an answer to that e-mail.

24

25     23. I then demanded return on my files, which I picked up from Mr. Berger's

26   office and delivered to Mr. Dapeer's office. I then hired Mr. Dapeer to file this

27   motion. Assuming that this motion is granted, Mr. Dapeer has agreed to assume my

28   representation going forward in the Chapter 11 case.

MOTION FOR ORDER REOPENING CASE AND GRANTING RELIEF FROM DEFAULT

1

2      24.    Mr. Dapeer wanted to see the written retainer agreement that I had signed

3  with Mr. Berger's office.  I provided Mr. Dapeer with a copy of the retainer

4  agreement.  He then pointed out to me that the retainer agreement violated Rule 3-410

5  of the California Rules of Professional Conduct.  That violation is discussed in Mr.

6  Dapeer's accompanying declaration in which he relates the contents of a disturbing

7  telephone conversation he had with Mr. Berger after I learned that my case had been

8  dismissed.  Had I known that Mr. Berger and his firm did not carry any malpractice

9  insurance, I never would have hired him as a lawyer.  As far as I am concerned, Mr.

10  Berger and his firm abandoned my interests in this case and concealed material facts

11  from me, including the fact that they were simply reckless and irresponsible in letting

12  the deadline pass for the timely filing of the plan and disclosure statement in this case.

13

14      25.    I never knew in advance what position Mr. Berger's firm would take in

15  connection with the hearing on January 25, 2011, because I did not know that I was

16  already in default for failure to timely serve and file the plan by what I understood to

17  be the due date of January 12, 2011.

18

19      26.    I am now engaged in loan modification efforts with the holder of the lien

20  on my residence.  However, there is a substantial risk that the lender will simply

21  proceed with foreclosure, and I will lose the property without ever having had the

22  opportunity to present a viable plan and disclosure statement to creditors and parties in

23  interest in this case because of the neglect and abandonment by my former counsel.

24

25      Executed at Los Angeles, California this *9th* day of March, 2011.

26

27      I declare under penalty of perjury under the laws of the United States of

28  America that the foregoing is true and correct.

1

2

/s/ *Jean Dethiersant*

JEAN DETHIERSANT

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR ORDER REOPENING CASE AND GRANTING RELIEF FROM DEFAULT

25.    I never knew in advance what position Mr. Berger's firm would take in connection with the hearing on January 25, 2011, because I did not know that I was already in default for failure to timely serve and file the plan by what I understood to be the due date of January 12, 2011.

26.    I am now engaged in loan modification efforts with the holder of the lien on my residence.  However, there is a substantial risk that the lender will simply proceed with foreclosure, and I will lose the property without ever having had the opportunity to present a viable plan and disclosure statement to creditors and parties in interest in this case because of the neglect and abandonment by my former counsel.

Executed at Los Angeles, California this 9th day of March, 2011.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

_JEAN DETHIERSANT_                     03/09/2011

## DECLARATION OF PHILIP D. DAPEER

I, Philip D. Dapeer, declare:

1.    I am an attorney duly admitted to practice law in the State of California and before this court. I am the principal in the law firm Philip D. Dapeer, a law corporation, newly retained counsel to debtor Jean Dethiersant.

2.    In such capacity I have personal knowledge of the facts set forth in this declaration and if called and sworn as a witness could and would competently testify thereto.

3.    I give this declaration in support of debtor's motion to reopen this case and for relief pursuant to Bankruptcy Rule 9024.

4.    After I was retained to represent Mr. Jean Dethiersant and after he learned on February 7, 2011, that his case had been dismissed with a 180 day bar on January 25, 2011, I telephoned attorney Michael Berger to find out his version of what had happened. I had already discussed the situation with Mr. Jean Dethiersant in detail, although I did not have any of the client files at this juncture. Mr. Berger put me off for two days before he would finally take my call. In order to get his attention, I had to leave a message to the effect that he should report this matter as a claim to his malpractice insurance carrier. When Mr. Berger finally took my call, he expressed his outrage at my having left that message on his voicemail. With that, he proceeded to tell me that neither he nor his firm carried any malpractice insurance. At the time I had this telephone conversation with Mr. Berger, I had not as yet seen the written retainer agreement that the client had signed with the Berger firm, and I said nothing more to Mr. Berger about the fact that he was telling me that he had no legal

12

malpractice insurance. I then asked him what had happened that caused the court to dismiss the case with the 180 day bar. He said that if I wanted to know what had happened, I could look it up on Pacer. He then said that he was not sure exactly what had happened at the hearing, and that he would have to check with attorney Moran Glazer to find out what had transpired. He said that he would call me back and tell me what had happened, but he has never done so.

5. I then asked Mr. Berger to explain why it was that the disclosure statement and plan had apparently been filed late. He said that I could "look it up" on Pacer or get a transcript of what took place at the hearing on January 25, 2011.

6. I then concluded the conversation by asking him whether he would proceed with a motion for relief from default under Bankruptcy Rule 9024 on behalf of the debtor or assist me in preparing such a motion. His answer was that he would not file such a motion and would not assist me in preparing such a motion on behalf of the client. With that comment, Mr. Berger ended the telephone call with me.

7. I then came to receive a copy of the retainer agreement that the client had signed with the Berger law firm. A copy of that retainer agreement is attached to the accompanying declaration of Mr. Dethiersant.

8. Based upon what I was told by Mr. Berger in my one telephone conversation with him, and what is set forth in the retainer agreement, it appears that Mr. Berger and his firm are in direct violation of Rule 3-410 of the California Rules of Professional Conduct. A copy of that rule is attached hereto by way of exhibit. Mr. Berger and his firm are in violation of the rule because they did not disclose to the client in writing at the time of the client's engagement that the Berger firm does not have professional liability insurance. It was obviously foreseeable to Mr. Berger at

13

1  the time of the engagement that the total amount of the member's legal representation

2  of the client in the matter would exceed four hours.  The failure of the Berger firm to

3  disclose the fact that it did not carry any professional liability insurance was a material

4  concealment of a material fact by Mr. Dethiersant's former attorneys.  Not only does

5  that omission subject Mr. Berger to disciplinary action by the State Bar of California,

6  it confirms the position of debtor on this motion that he was deceived by Mr. Berger at

7  the time of the client engagement and the protection of his interests were abandoned

8  by Mr. Berger over the course of the client's representation in the Chapter 11 case.

9

10      9.    Mr. Berger and his firm have not offered to refund to the debtor any

11  amount of the retainer that was paid, and the file does not reflect that any reports were

12  filed with the Office of the United States Trustee in support of any drawdown against

13  the retainer paid by the client for legal services rendered over the course of the

14  Chapter 11 case.  In the files that were turned over to Mr. Dethiersant by Mr. Berger's

15  office, I have found Mr. Berger's application to be employed on general retainer,

16  dated September 10, 2010.  That document recites that Mr. Berger received from Mr.

17  Dethiersant a $20,000 retainer in connection with the Chapter 11 case.  However,

18  declarant has found no evidence that there has been compliance by Mr. Berger or any

19  other member or associate of his firm with the Requirements and Guidelines of the

20  Office of the United States Trustee with respect to the taking of draws against

21  retainers following the filing of a Chapter 11 case.

22

23      10.    If the court grants the relief sought by this motion, declarant is prepared

24  to immediately proceed with the representation of the debtor as debtor-in-possession,

25  and will promptly submit an appropriate application for employment as reorganization

26  counsel to the debtor.  Attached hereto, marked Exhibit "D" and incorporated herein

27  by this reference is a listing of the current cases in which declarant represents Chapter

28  11 debtors and where declarant's employment application has been approved by

1   various judges of this court.  Just last month, declarant succeeded in confirming two

2   plans of reorganization in real estate cases similar to the case for Mr. Dethiersant.

3   Those plans were confirmed in the case of Stacie Hunt-Pando and the case of Real

4   Estate Short Sales, Inc.

5

6       11.    This motion has been brought within 20 days after declarant received the

7   pleadings, records and files from Mr. Berger's office.  Declarant needed time in order

8   to review the entire file in order to try to find out why it was that the client's former

9   counsel did not timely file the plan and disclosure statement.  Declarant could find no

10  excuse or justification for such failure in any document contained in Mr. Berger's

11  files.  It appeared to declarant that Mr. Dethiersant had provided his former counsel

12  with extensive and comprehensive financial information concerning the debtor's

13  financial condition, and what e-mail communication declarant was able to locate in

14  the files confirmed that Mr. Dethiersant was at all times a cooperative and responsive

15  client who promptly provided his attorneys with the information that they would have

16  needed in order go forward with a plan and disclosure statement in this case on a

17  timely basis.

18

19      12.    Mr. Berger refused to explain to me why it was that the case was

20  dismissed with the 180 day bar.  The file is clear that Mr. Berger and his firm had

21  failed to timely serve and file the plan and disclosure statement.  Mr. Berger would

22  not tell declarant what happened at the hearing on January 25, 2011.  Given the fact

23  that Mr. Berger told declarant that he would refuse to cooperate in the presentment of

24  this motion, declarant cannot be any more specific in pointing out why it is the

25  debtor's position that his interests were abandoned by his former counsel and that he

26  was treated in an unethical fashion.

27

28      Executed at Westlake Village, California this *il* day of March, 2011.

15

1

2          I declare under penalty of perjury under the laws of the United States of

3    America that the foregoing is true and correct.

4

5          _____

6          PHILIP D. DAPEER

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR ORDER REOPENING CASE AND GRANTING RELIEF FROM DEFAULT

1            **MEMORANDUM OF POINTS AND AUTHORITIES**

2

3        Debtor submits the following memorandum of points and authorities in support

4 of his motion for order reopening this case for the purpose of granting relief from

5 default:

6

7 **I.**   **DEBTOR IS ENTITLED TO AN ORDER OF THIS COURT VACATING**

8       **THE ORDER DISMISSING THIS CASE, ENTERED FEBRUARY 3,**

9       **2011, AND REINSTATING THIS CASE AS AN ONGOING CASE**

10       **UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

11

12        This is a motion brought pursuant to Bankruptcy Rule 9024. That rule makes

13 Federal Rule of Civil Procedure 60 applicable to bankruptcy cases. Rule 60(b)

14 provides that a court may relieve a party from a judgment on the following grounds:

15

16      (1)    Mistake, inadvertence, surprise or excusable neglect;

17      (2)    Newly discovered evidence;

18      (3)    Fraud, misrepresentation or other misconduct of an adverse party;

19      (4)    The judgment is void;

20      (5)    The judgment has been satisfied, released or discharged, a prior judgment

21 upon which it is based has been reversed or otherwise vacated, or it is no longer

22 equitable that the judgment should have prospective application; or

23      (6)    Any other reason justifying relief.

24

25        Rule 60(b) strikes a balance between serving the ends of justice and preserving

26 the finality of judgments. *Nemaizer v. Baker*, 793 Fed.2d 58, 61 (2nd Cir. 1986). The

27 decision whether to grant a party relief under Rule 60(b) lies within the sound

28

1   discretion of the bankruptcy court, and will be reversed on appeal if that discretion is

2   abused. *Branum v. Clark*, 927 Fed.2d 698, 704 (2nd Cir. 1991).

3

4       In this case, the motion is brought on the ground of counsel error. Relief from

5   counsel's error is normally sought pursuant to Rule 60(b)(1) on the theory that such

6   error constitutes mistake, inadvertence or excusable neglect. *Nemaizer v. Baker*,

7   *supra* 793 Fed.2d at 62.

8

9       However, in this case, Mr. Dethiersant has been prevented, by the unethical

10  conduct of his former counsel, in presenting facts that would demonstrate mistake,

11  inadvertence, surprise or excusable neglect. The moving declaration of attorney

12  Dapeer establishes that the debtor's former counsel refused to cooperate in the

13  presentment of this motion, either directly or indirectly. Mr. Berger flat out refused to

14  file this motion on behalf of his client and was unwilling to cooperate with newly

15  retained counsel in presenting such a motion based upon facts that would establish

16  inadvertence, surprise or excusable neglect.

17

18      As attorney Dapeer sets forth in his moving declaration, he was told by former

19  attorney Berger to " get whatever information was required for such a motion from

20  Pacer." Obviously, such a response from former counsel was wholly inadequate. A

21  motion based upon attorney inadvertence, surprise or excusable neglect would, at a

22  minimum, require some moving declaration from the attorneys involved explaining

23  exactly what happened that would warrant relief on the ground of attorney

24  inadvertence, surprise or excusable neglect. The moving papers on this motion will be

25  served on former counsel, and hopefully Mr. Berger will reconsider his position and

26  put in by way of reply appropriate declarations that would demonstrate attorney

27  inadvertence, surprise or excusable neglect that resulted in the order dismissing this

28  case prior to the time debtor was given any opportunity to present his plan and

2

1 disclosure statement to creditors and parties in interest.

2

3 In effect, the debtor was deprived of any opportunity to achieve the ultimate

4 goal of a Chapter 11 case; namely, the confirmation of a feasible plan of

5 reorganization that would enable the debtor to successfully reorganize his financial

6 affairs.  As the matter now stands, in view of the 180-day bar, the debtor is subject to

7 state-court foreclosure proceedings by any or all of the secured creditors in this case.

8 Foreclosure would essentially deprive general unsecured creditors of any recovery on

9 their claims and would certainly not be in their best interests in this case.  The only

10 benefitted parties are the secured creditors who have now reaped a windfall by the

11 dismissal of this case with a 180-day bar.  The record is clear that such windfall is not

12 the result of any mistake, inadvertence or neglect of any kind on the part of the debtor.

13 *See Pincay v. Andrews*, 389 Fed.3d 853 (9th Cir. 2004); *Pioneer Investment Services*

14 *Company v.  Brunswick Associates Limited Partnership*, 507 U.S. 380 (1993).

15

16 The opposing argument that is usually made in cases dealing with relief from

17 counsel's error is that a person who selects counsel cannot thereafter avoid the

18 consequences of the agent's acts or omissions.  The client may very well have had

19 difficulty in procuring counsel, but that is not a reason to believe that the selection was

20 so restricted that the client was unable to exercise some discretion with regard to the

21 selection of counsel.  Under such circumstances, the client should be bound by the

22 errors of counsel freely chosen, and seek relief by means of an action for legal

23 malpractice.  *See Gonzalez v. Gannett Satellite Information Network, Inc.*, 903

24 Fed.Supp. 329 (N.D.N.Y. 1995); *Nemaizer v. Baker*, *supra* 793 Fed.2d at 58.  As

25 stated in *In re Critical Care Support Services,* 236 B.R. 137 (1999), malpractice, gross

26 or otherwise, may be a good reason to recover from a lawyer but may not justify

27 prolonging litigation against the original adversary.

28

1    Here, however, the debtor was victimized from the inception of this case by a

2    material misrepresentation or concealment of material fact by Mr. Berger; namely,

3    whether or not he or his firm carried malpractice insurance.  That omission or

4    concealment, as attested to in Mr. Dethiersant's moving declaration, is an ethical

5    violation of Rule 3-410 of the California Rules of Professional Conduct.  As such, the

6    client was deprived of the opportunity to make an intelligent choice regarding the

7    selection of bankruptcy counsel.  He was unable to choose bankruptcy counsel who

8    would have insurance for the very claim that is made on this motion.  Thus, the line of

9    cases that impute attorney error to the client on an agency theory should be viewed as

10   not controlling in this circumstance.

11

12   Rather, this case should be viewed as a case of abandonment by counsel or, as

13   characterized by the Second Circuit, the "complete disappearance" of counsel.  *See*

14   *United States v. Cirami*, 563 Fed.2d 26 (2nd Cir. 1977); *In re Critical Care Support*

15   *Services,* 236 B.R. 137 (1999).  Mr. Berger effectively "disappeared" from the

16   inception of this case when he misrepresented to the debtor the fact that his firm had

17   no malpractice insurance.  That fact should have been inserted in the written

18   disclosures contained in the retainer agreement signed by the debtor and his counsel at

19   the inception of this case.  Further, the fact that Mr. Berger now refuses to cooperate

20   with the debtor in the presentment of this motion is further evidence of a complete

21   abandonment of the interests of the client which is a direct violation of the California

22   Rules of Professional Conduct. See Rules of Professional Conduct, Rule 3-110. This

23   motion should now be viewed in the context of a total lack of counsel without any

24   fault on the part of the debtor, Mr. Dethiersant.

25

26   No creditor can demonstrate any prejudice in this situation.  It appears from the

27   docket that Mr. Berger's firm had filed a plan and disclosure statement on January 24,

28   2011.  The case should be reopened so that the matter may proceed by way of a

4

1  motion for approval of disclosure statement and confirmation of a plan of

2  reorganization.  The debtor has retained new counsel who is ready to proceed

3  promptly in the matter upon the granting of this motion.

4

5  DATED: March _14_, 2011                    PHILIP D. DAPEER
                                             A Law Corporation
6

7                                            PHILIP D. DAPEER

8                                            Attorney for Debtor

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ORDER REOPENING CASE